CRIMINAL LAW.—*Arrest of Judgment.—Grand Jury.*—Alleged irregularity in the selection or empanelling of a grand jury is not ground for a motion in arrest of judgment upon an indictment found and returned by such grand jury.

SAME.—*Indictment.—Murder in First Degree.*—An indictment for murder in the first degree charged, that, on, etc., at, etc., the defendant "did then and there unlawfully, feloniously, purposely, and with premeditated malice, kill and murder" one A. B., "by then and there feloniously, purposely, and with premeditated malice, shooting and mortally wounding the body and person of said" A. B., "with a gun loaded with gun-powder and leaden balls, which he," the defendant, "then and there in his hands had and held," etc.

*Held*, on motion in arrest, that the indictment is sufficient.

SAME.— *Witness.—Credibility of.—Instruction to Jury.—Defendant's Testimony.*—On the trial of a cause wherein the defendant testifies as a witness in his own behalf, it is error in the court to instruct the jury, in relation to the credibility of such witness, that "one interested will not usually be as honest and candid as one not so."

From the Marion Criminal Circuit Court.

*B. F. Davis* and *J. L. Mason*, for appellant.

*C. A. Buskirk*, Attorney General, for the State.

NIBLACK, J.—This was a criminal prosecution based on an indictment for murder in the first degree. There was a verdict, finding the appellant guilty of manslaughter, and fixing his punishment at twenty-one years in the state-prison. Motions for a new trial and in arrest of judgment were severally made and overruled, and there was judgment on the verdict.

We will first consider the motion in arrest of judgment, as it raises the question of the sufficiency of the indictment.

The causes which were assigned in arrest of the judgment, as we construe the legal import of the language in which they are stated, assisted as we have been by the brief of counsel, were, in substance:

1. That the grand jury which found the indictment had no legal authority to enquire into the offence charged,

because such grand jury consisted of twelve men, when the law at that time provided that a grand jury should consist of six men only.

2.    That the facts charged did not constitute a public offence.

The question presented in the cause first assigned was one which could not be considered under a motion in arrest of judgment.  It involved an enquiry into the manner of the organization of the grand jury, and not as to its jurisdiction over the offence.  2 R. S. 1876, p. 409, sec. 144 ; *Mullen* v. *The State*, 50 Ind. 169 ; *Bond* v. *The State*, 52 Ind. 457 ; *Dillon* v. *The State*, 9 Ind. 408 ; *Meiers* v. *The State, ante,* p. 336.  If the question presented could have been thus raised, the objection seems to us to have been, at all events, an invalid one.  See *The State* v. *May*, 50 Ind. 170.

The substantial part of the indictment, which we quote in considering the second assigned cause, was as follows :

" The grand jurors for the county of Marion, and State of Indiana, upon their oaths present that Lewis Veatch, on the 16th day of August, A. D. 1875, at and in the county of Marion, and State aforesaid, did then and there unlawfully, feloniously, purposely, and with premeditated malice, kill and murder Melvin Murray, by then and there feloniously, purposely, and with premeditated malice, shooting and mortally wounding the body and person of said Melvin Murray, with a gun loaded with gun-powder and leaden balls, which he, the said Lewis Veatch, then and there in his hands had and held, and so the jurors aforesaid, on their oaths aforesaid, do charge and present that on the day aforesaid, in the manner and form aforesaid, the said Lewis Veatch did feloniously, purposely, and with premeditated malice, kill and murder the said Melvin Murray, contrary to the form of the statute," etc.

The indictment, it seems to us, contained a valid charge of murder in the first degree against the appellant, and hence the facts charged in it did constitute a public offence.

The case of *Shepherd* v. *The State*, 54 Ind. 25, is quoted

by counsel for the appellant as an authority against the sufficiency of the indictment in this case, but we do not so regard it. The uncertainty which was held to exist in the indictment in that case, as to the manner in which the deceased came to his death, is not found in this indictment. A brief comparison of the two indictments is sufficient to illustrate the difference between them.

It seems to us quite obvious, that the court did not err in refusing to arrest the judgment.

On the trial the appellant testified, as a witness, in his own behalf, concerning matters material to the merits of the cause.

In regard to the testimony thus given by the appellant, the court instructed the jury in these words:

" The defendant has testified in his own behalf. His testimony, however, is subject to the usual tests of credibility as other interested witnesses. One interested will not usually be as honest and candid as one not so."

In the case of *Greer* v. *The State*, 53 Ind. 420, an instruction substantially the same, and practically in the same language as the one above quoted, was considered and ruled upon by this court. It concluded with the identical words, that " one interested will not, usually, be as honest and candid as one not so."     .

WORDEN, J., in delivering the opinion in that case, said:

" We think the court erred in giving the latter part of the charge. The idea is conveyed by the charge, that, in a majority of instances, or as a usual rule, subject of course to exceptions, persons interested will not be as honest and candid as those who are not interested. This may be true, in point of fact, and if so, it is a sad commentary upon the honesty and candor of a majority of mankind. But, if the proposition be true, it is not a legal presumption, but matter of fact, of which the jury were the exclusive judges, and concerning which the court could not, without going out of its province, undertake to instruct them.

Veatch *v.* The State.

" It was the exclusive province of the jury to determine, from their knowledge of mankind, from the evidence in the cause, and from the appearance and manner of the witness, what credit was due to his evidence, and whether any, and if so, how much, credence should be withheld in consequence of his interest in the cause. It was, in short, the exclusive province of the jury to determine whether one interested would or would not usually be as honest and candid as one not interested."

We may add, that the charge in this case was too general and indiscriminate in its terms. It made no exception in favor of witnesses whose interests are but nominal, and did injustice, we think, to interested witnesses as a class. It certainly does not follow, as a legal conclusion, that, because a person has an interest in the result of a suit, he will generally make a dishonest and uncandid witness. Like other witnesses, the credibility of an interested witness depends on all the facts and circumstances of each particular case, and not upon any rule so general as that laid down by the court below.

We think the charge was calculated to make an erroneous impression on the minds of the jury, while considering the credibility of the appellant's testimony, and must presume that the jury were misled by it. For that reason, the judgment will have to be reversed.

The judgment is reversed, and the cause remanded, for a new trial.

The clerk will give the proper notice for the return of the prisoner.